UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVESTER HILL,

        Plaintiff,

v.                                                Case Number 20-12335
                                                 Honorable David M. Lawson

WARDEN T. WINN, C.O. WHITE,
C.O. HUIZAR, C.O. SCHOTT, A./R.N. GROSS,
H.U.M. MCCAULEY, and T. MASSICK,

        Defendants.
_____/

## OPINION AND ORDER PARTIALLY DISMISSING COMPLAINT

Plaintiff Sylvester Hill, a state prisoner at the Saginaw Correctional Facility (SRF) in Freeland, Michigan, sought medical attention when he discovered blood in his urine and numbness in his "abs." He was dissatisfied with the response he received from his jailors, and he especially was upset when he was disciplined for calling his family to complain about his poor medical care. He filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against SRF Warden T. Winn; corrections officers White, Huizar, and Schott; nurse Gross; health unit manager McCauley, and Michigan Department of Corrections director T. Massick, alleging that the defendants were deliberately indifferent to his serious medical needs and unlawfully retaliated against him. The Court has granted him leave to proceed without prepayment of the filing fee for this action.

Before allowing the case to go forward, Congress has directed courts to screen the complaint for colorable merit, since it is a case filed by a prisoner against a state or governmental entity. 28 U.S.C. § 1915A(a). Having done so, the claims against Warden Winn, nurse Gross, health unit manager McCauley, and director Massick must be dismissed because the complaint

does not contain any allegations against them, but the case against corrections officers White, Huizar, and Schott may proceed.

I.

Hill alleges that on July 17, 2020, he began "pissing blood." He notified defendants Huizar and Schott of that fact and told them it was a medical emergency, but both refused to contact a healthcare worker. Hill previously had sent a kite to healthcare complaining that his abs were numb but received no response.

The complaint includes a copy of a grievance Hill filed over defendant Schott refusing to call healthcare on his behalf. The grievance was denied, and an appeal was pending at the time Hill filed his complaint. Hill alleges that after he filed the grievance, defendant White restricted Hill's phone usage because he attempted to call his family to inform them he was urinating blood and was being denied medical care.

Hill states that the denial of medical care for his symptoms caused him pain and numbness, and that the defendants were deliberately indifferent to a serious medical need in violation of the Eighth Amendment to the Constitution and due process protections. He seeks a declaration that the defendants' acts and omissions violated his constitutional rights, a preliminary and permanent injunction ordering money damages for his pain and suffering and for future hospital bills, compensatory and punitive damages, his costs, a jury trial on the issues, and any other relief the Court "deems just, proper, and equitable." Hill also seeks a return of the five dollars he was charged "just to piss in a cup."

II.

When, as here, a plaintiff has asked the Court to waive fees and costs because he cannot afford to pay them, the Court has an obligation to screen the case for merit and dismiss the case if

it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In addition, Congress mandated in the Prison Litigation Reform Act (PLRA) that the Court screen for colorable merit every prisoner complaint filed against a state or governmental entity. 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.")

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28). Dismissal on the Court's initiative is appropriate if the complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

Although a *pro se* litigant's complaint must be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "[t]he leniency granted to pro se [litigants] . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The screening mandated by Congress in section 1915(e)(2) includes the obligation to dismiss civil complaints filed by prospective *pro se* filers if they "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199 (2007).

To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted, Hill bases his claims on 42 U.S.C. § 1983, which provides a vehicle for individuals to seek redress in court for violations of rights secured by the Constitution and laws of the United States. To state a claim under that section, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A.

Hill has not stated any claim upon which relief may be granted against defendants T. Winn, the warden of Saginaw Correctional Facility; T. Massick, whom Hill describes as "Director/Commissioner of the Michigan Department of Corrections" (and who he named in the body of the complaint but omitted from the caption); nurse Gross; or health unit manager McCauley. Other than listing these defendants and their titles, Hill provides no allegations of any individual actions or omissions by them, or any personal involvement in the violation of his constitutional or federal rights.

Hill does allege that he sent a kite to "health care" complaining that his abs were numb and received no response. If this allegation is intended to demonstrate that defendants Gross and McCauley, both associated with health care at the facility, were deliberately indifferent to his medical needs, it also fails. As *Iqbal* instructs, a plaintiff must plead that the constitutional violation was caused by a defendant's "own individual actions." *Iqbal*, 556 U.S. at 676. Hill has

-4-

not alleged any actions by either Gross or McCauley, and he does not suggest that either knew of and failed to respond to his kite or his complaints of symptoms.

B.

The complaint does contain some specific, albeit terse, allegations against corrections officers Huizar, Schott, and White. Hill contends that Huizar and Schott deliberately denied his medical care, and White punished him when he tried to notify his family. It is well known that the State "has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

A constitutional claim for the deprivation of adequate medical care "has two components, one objective and one subjective." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To establish a serious need for medical care, "*Farmer* requires only that 'the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm[,]' so as to avoid 'the unnecessary and wanton infliction of pain.'" *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 834). A serious medical need may be demonstrated by a physician's diagnosis mandating treatment or a condition that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897 (citations omitted).

Establishing the second, subjective, component "requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Dominguez*, 555 F.3d at 550 (quoting *Comstock*, 273 F.3d at 703). Deliberate indifference requires "more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703 (citations omitted). Courts evaluating such a claim "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).

In this case, Hill says that he perceived the blood in his urine to be a medical emergency, but Huizar and Schott refused to contact a healthcare provider for him and ignored his requests. And, adding insult to injury, White retaliated against him by suspending his phone privileges when Hill tried to tell his family that he was denied healthcare to address his "emergency." Urinating blood for two days is a remarkably abnormal physical condition. Based on Hill's allegations, it is reasonable to infer that "[a] reasonable physician or lay person would have recognized the need for prompt treatment." *Gray v. Dorning*, 202 F.3d 268 (6th Cir. 1999) (Table). Hill's complaint contains sufficient facts to satisfy the objective component of his Eighth Amendment deliberate indifference claim. It is not clear why the corrections officers ignored Hill's pleas for medical attention. But ignore it they did, and "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition." *Blackmore*, 390 F.3d at 899. That establishes the subjective component.

White meeting out punishment for Hill's conduct — the complaint is ambiguous on whether it was for filing a grievance or trying to contact family members about his medical plight — can be viewed as retaliatory in violation of the First Amendment, or the wanton infliction of punishment itself by silencing the prisoner's attempt to obtain medical care. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986) ("'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'") (citation and some internal quotation marks omitted).

A retaliation claim requires protected conduct, adverse action, and a causal link. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Hill alleged that White disciplined him after he filed a grievance. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Thomas v. Eby,* 481 F.3d 434, 439 (6th Cir.2007). Hill has alleged that he engaged in protected conduct.

Hill also alleged that White punished him by depriving him of phone privileges when he was trying to inform his family about his medical condition and lack of care. "Retaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus–X,* 175 F.3d at 398. Not every action is an adverse action; *de minimus* slights and inconveniences do not qualify. *Id.* at 396. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is adverse." *Id.* at 398. But the Sixth Circuit has held that charging an inmate with a major misconduct violation is sufficiently adverse to "deter a person of ordinary firmness' from the exercise of the right at stake," *id.* at 396, because conviction of such a violation could result in the prisoner's segregation or loss of good time credits, *Brown v. Crowley,* 312 F.3d 782, 789 (6th Cir.2002). In this case, White allegedly went beyond a

charge and actually inflicted punishment. At this stage of the case, that is enough to satisfy the adverse action element.

The third element might be inferred from the timing of the events. It is true that "the third element — a causal connection between the protected activity and the adverse action — needs to be established by the plaintiffs to complete their affirmative case." *Thaddeus–X,* 175 F.3d at 399. However, "retaliation 'rarely can be supported with direct evidence of intent.'" *Harbin–Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir.2005) (quoting *Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir.1987)). That is why "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate" to consider when determining whether a genuine issue of fact on the third prong has been established. *Thaddeus–X,* 175 F.3d at 399. Once again, the complaint, liberally construed, contains enough facts to allow the claim to proceed.

### III.

The plaintiff pleads no claims against defendants Winn, Gross, McCauley, or Massick, but his claims against defendants White, Huizar, and Schott brought under 42 U.S.C. § 1983 are viable.

Accordingly, it is **ORDERED** that the plaintiff's claims against defendants Winn, Gross, McCauley, and Massick are **DISMISSED WITH PREJUDICE**. The claims against defendants White, Huizar, and Schott may proceed.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 3, 2020